564 A.2d 188

**Cynthia L. SMITH**

v.

**Dale F. RENAUT, Richard Huff and Key Real Estate, Inc.**

**Appeal of Richard HUFF and Key Real Estate, Inc.**

Superior Court of Pennsylvania.

Argued Feb. 1, 1989.

Filed Aug. 21, 1989.

300

302

Stephen L. Banko, Harrisburg, for Huff and Key Real Estate, appellants.

Daniel W. Shoemaker, York, for Smith, appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

WIEAND, Judge:

This appeal is from a judgment entered on the verdict of a jury awarding damages to a purchaser of real estate against the seller, the real estate brokering agency, and the real estate salesman who made the sale because of their failure to disclose (1) the full extent of termite damage and (2) the presence of chlordane, a carcinogen, in the well water. Although all defendants appealed, the seller's appeal was dismissed for failure to file a brief. The appeals presently before this Court, therefore, are the appeals of the brokering agency and salesman. Their principal contentions are that the evidence failed to establish that they were guilty of fraud or otherwise liable to the purchaser for either compensatory or punitive damages.

It was in 1976 when Dale F. Renaut purchased a residence located at R.D. # 1, Route 30, Abbottstown, York County. It was then discovered that the property was infested with termites. Therefore, Renaut hired a professional exterminator to rid the property of the termites. The extermination was successful; and the exterminator re-

turned annually thereafter to inspect the property for termites, but found none. Renaut resided in the home for ten years before deciding to sell.

In May, 1986, he listed the property for sale with Key Real Estate, Inc. Its agent, Donna Hurfel, inspected the premises, and Renaut pointed out to her the areas of the home which he knew to have been damaged by termites. These included small, visible perforations in the living room floor and damage to the joists beneath the first floor, which could be seen from the basement.

Cynthia Smith, who was accompanied by her mother and two sisters, was shown the property on May 21, 1986, by Richard Huff, a real estate salesman employed by Key Real Estate. At that time, Renaut told her that there had been termite damage. According to Smith's testimony, however, Huff, the salesman, told her that "the property has minor termite damage, but it had been repaired, so you don't need to worry about it." After viewing the house, Smith agreed to purchase it for $45,000. Approximately a month later, Smith again visited the house with Huff, observed the perforations in the living room floor and was told that it was termite damage. Smith visited the premises a third time, three days before closing, when she spent several hours there. Although Renaut was at home on this occasion, Smith did not ask him about termite damage, and the matter of termite damage was not discussed.

Prior to the closing, Key Real Estate arranged for an inspection of the property and the issuance of a pest-free certificate as required by the bank which was financing a part of the transaction. At closing, the purchaser was given a copy of a termite certification which recited that there was no live infestation of termites, but she did not request or receive a copy of the pest-free certificate required by the bank. This certificate showed that the termite condition had been "treated with 1% chlordane" in 1976.

After taking title, Smith undertook renovations of the home. When paint was removed from woodwork, it dis-

closed termite damage which had been concealed by strips of tape covered by paint.[1] Upon close examination, Smith found additional termite damage of which she had not previously been aware. In September, 1986, she obtained from the bank a copy of the termite inspection report and spoke with the exterminator who had treated the home. In this manner she learned that chlordane had been used by the exterminator. Upon the advice of her lawyer, Smith then had the well water tested and learned that it contained a dangerously high level of chlordane. Renaut testified at trial that he had not been aware that a carcinogen had been used to exterminate the termites; he said that he had been drinking the water during the ten years in which he had occupied the premises. Although the date is uncertain, the record suggests that chlordane was determined to be carcinogenic sometime between 1976 and 1986. After Smith learned of the high level of chlordane and the additional termite damage, she abandoned her effort to renovate the home and sold it for $39,000.

She filed an action against Renaut, Huff and Key Real Estate, alleging that they had fraudulently concealed or failed to disclose the full extent of the termite damage and/or the contamination of the well water by chlordane. The jury found that the defendants had been guilty of fraud, and Smith's damages were assessed at $20,270. It apportioned these damages and directed payment thereof as follows: Renaut—$2,000; Huff—$4,000; and Key Real Estate—$14,270.[2] In addition to compensatory damages, the jury directed Huff to pay punitive damages in the amount of $2,500 and Key Real Estate to pay punitive damages of $20,000.

A judgment n.o.v. may be entered only in a clear case where the facts are such that two reasonable persons cannot fail to agree that the plaintiff failed to make out a

---

**1.** The defendants' evidence was that Renaut had not done any interior painting or redecorating during the ten years in which he had occupied the premises.

**2.** The jury found that Renaut was vicariously liable for the fraud of his agents but was entitled to be indemnified by them.

case and that the jury's verdict was improper. *Fleck v. Durawood, Inc.*, 365 Pa.Super. 123, 127, 529 A.2d 3, 5 (1987); *Northwest Savings Ass'n v. Distler*, 354 Pa.Super. 187, 191, 511 A.2d 824, 825 (1986). In reviewing a denial of a motion for judgment n.o.v., the evidence and all reasonable inferences which may be drawn therefrom must be considered in the light most favorable to the verdict winner. *Vernon v. Stash*, 367 Pa.Super. 36, 45–46, 532 A.2d 441, 445–446 (1987), quoting *Maravich v. Aetna Life & Casualty Co.*, 350 Pa.Super. 392, 396, 504 A.2d 896, 898 (1986) and *Kearns v. Clark*, 343 Pa.Super 30, 34, 493 A.2d 1358, 1360 (1985). If there is any basis upon which the jury could have properly made its award, the denial of the motion for judgment n.o.v. must be affirmed. *Niles v. Fall Creek Hunting Club, Inc.*, 376 Pa.Super. 260, 269, 545 A.2d 926, 931 (1988).

 Where a broker employed to sell real estate misrepresents or conceals a material fact, he may be found liable to the purchaser in damages. *Shane v. Hoffmann*, 227 Pa.Super. 176, 324 A.2d 532 (1974). In *Shane,* the Superior Court defined actionable fraud in the following manner:

> It is well-settled that one who fraudulently makes a misrepresentation of fact or law for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused him by his justifiable reliance upon the misrepresentation. *Savitz v. Weinstein*, 395 Pa. 173, 178, 149 A.2d 110 (1959). To be actionable, the misrepresentation need not be in the form of a positive assertion. As our Supreme Court said in *McClellan Estate*, 365 Pa. 401, 407, 75 A.2d 595 (1950): "... fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture. It is any artifice by which a person is deceived to his disadvantage." [Citing *Reichert Estate*, 356 Pa. 269, 274, 51 A.2d 615 (1947).]

> The elements of a fraud and deceit action in trespass may be said to consist of: (1) a false representation of an existing fact, *Fidurski v. Hammill*, 328 Pa. 1, 195 A. 3 (1937); (2) if the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved; while, if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action, *DeJoseph v. Zambelli*, 392 Pa. 24, 139 A.2d 644, affirming 11 Pa.D. & C.2d 447 (1958); (3) scienter, which may be either actual knowledge of the truth or falsity of the representation, reckless ignorance of the falsity of the matter, or mere false information where a duty to know is imposed on a person by reason of special circumstances (16 P.L.E., Fraud §§ 7,[3] [ ] (4) ] reliance, which must be justifiable, so that common prudence or diligence could not have ascertained the truth; and, (5) damage to the person relying thereon.

*Id.* 227 Pa.Super. at 181–182, 324 A.2d at 536. See also: *De Joseph v. Zambelli*, 11 D. & C.2d 447 (1957), *aff'd per curiam*, 392 Pa. 24, 139 A.2d 644 (1958). Thus, fraud arises where the misrepresentation is knowingly false, where there is an intentional concealment calculated to deceive, or where there is a nonprivileged failure to disclose. *Quashnock v. Frost*, 299 Pa.Super. 9, 16, 445 A.2d 121, 124 (1982), quoting from *De Joseph v. Zambelli, supra* 11 Pa.D. & C.2d at 452. While a concealment may constitute fraud, mere silence is not sufficient in the absence of a duty to speak. See generally: 37 C.J.S. Fraud § 15. Under Pennsylvania law, a seller has an affirmative duty to disclose a known termite infestation. See: *Quashnock v. Frost, supra; Glanski v. Ervine*, 269 Pa.Super. 182, 409 A.2d 425 (1979). See also: *De Joseph v. Zambelli, supra.*

The plaintiff's evidence in this case was sufficient, if believed, to show that the real estate salesman had

---

**3.** In *Aiello v. Ed Saxe Real Estate, Inc.*, 508 Pa. 553, 560, 499 A.2d 282, 286 (1985), the Supreme Court overruled *Shane v. Hoffmann, supra*, to the extent that it had held that scienter was required on the part of the principal where his agent made the misrepresentation.

misrepresented the extent of the termite damage. He told her that the property had only "minor" termite damage which had been "repaired" when, in fact, the damage was extensive and had not been repaired. Because he told the purchaser "not to worry" about it, moreover, the jury could have found that he acted intentionally to dissuade the purchaser from making a more careful inspection calculated to disclose the full extent of termite damage. Where a real estate salesman, despite knowledge of a material defect and intending to make a sale, causes the vendee to refrain from inspecting the premises or causes him to make only a cursory inspection, as a consequence of which the material defect is not discovered, the salesman and his agency are subject to liability. Restatement (Second) of Torts, § 353, comment d. See: *Roberts v. Estate of Barbagallo,* 366 Pa.Super. 559, 570, 531 A.2d 1125, 1131 (1987). Therefore, the trial court properly denied appellants' motion for judgment n.o.v.

The evidence was insufficient, however, to submit to the jury the issue of appellants' liability to appellee for fraudulent concealment of chlordane, a carcinogen, in the water supply. There is not one iota of evidence that any misrepresentation was made regarding the presence of chlordane in the water or that its presence was concealed in any way before the agreement of sale was signed. The agreement of sale was also silent with respect to the presence or absence of chlordane in the water. Appellee argues that the vendor and his agents had a duty to disclose the presence of chlordane in the water. We disagree.

It is true that in *Quashnock v. Frost, supra,* the Superior Court, in holding that a vendor had an affirmative duty to disclose a known termite infestation, advocated adoption of a modern rule "that where there is a serious and dangerous latent defect known to exist by the seller, then he must disclose such defect to the unknowing buyer or suffer liability for his failure to do so." *Id.* 299 Pa.Super. at 17–19, 445 A.2d at 125. The proposed rule, however, was limited to defects known to the seller. There can be no

liability upon the seller or his agent, even under such a rule, for failing to disclose an unknown condition or one whose risk is not realized. In the instant case, there is not a scintilla of evidence that the seller, his broker, or the real estate salesman knew that chlordane had been used to exterminate the termites and that a residue remained in the water supply prior to the execution of the agreement of sale. Thereafter the rights of the parties were determined by the terms of their contract. It was not enough to impose liability upon the seller or his agent that it was thereafter learned from the pest-free certificate delivered to the mortgagee at closing that chlordane had been used to exterminate termites. There also is no evidence that Renaut, or Huff, or Key Real Estate had realized at any time prior to the closing that chlordane was a carcinogen. Knowledge of the condition and appreciation of the risk prior to the time of the agreement were essential elements of proof in plaintiff's case; they were not to be presumed. In the absence of such evidence, the appellant brokering agency and salesman could have no liability to the purchaser because of chlordane found in the water after the property had been sold. See: *Roberts v. Estate of Barbagallo, supra* 366 Pa.Super. at 569, 531 A.2d at 1130 (where there was no evidence seller knew of the type of installation, seller could not have fraudulently concealed or misrepresented knowledge that the home was insulated with ureaformaldehyde foam). See also: *In re Estate of Brojack*, 321 Pa.Super. 154, 169, 467 A.2d 1175, 1183 (1983) ("hindsight will neither allow us to impose a duty to disclose what one is unaware of, nor allow us to find fraud in concealing what one does not know.").

The termite and the chlordane issues were submitted to the jury on instructions which allowed plaintiff to recover damages for both. The jury returned a verdict which did not define or label the damages which it awarded. These damages may have included—they probably did—compensation for both the presence of chlordane in the water and the damage done by termites. We cannot know

how much was awarded for each. Therefore, a new trial is required. See: *Niles v. Fall Creek Hunting Club, Inc.,* *supra.* See also: *Izzi v. Philadelphia Transportation Co.,* 412 Pa. 559, 195 A.2d 784 (1963); *McGuire v. Schneider, Inc.,* 368 Pa.Super. 344, 534 A.2d 115 (1987), *aff'd per curiam,* 519 Pa. 439, 548 A.2d 1223 (1988).

 The evidence was also inadequate to support an award of punitive damages. Generally, the plaintiff in an action for fraud may recover all actual losses caused by the defendant's fraud. *Neuman v. Corn Exchange National Bank & Trust Co.,* 356 Pa. 442, 455, 51 A.2d 759, 766 (1947); *Lokay v. Lehigh Valley Cooperative Farmers, Inc.,* 342 Pa.Super. 89, 99, 492 A.2d 405, 410 (1985); *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 117, 464 A.2d 1243, 1257 (1983). The plaintiff may also recover punitive damages where there are aggravated circumstances. *Long v. McAllister,* 275 Pa. 34, 118 A. 506 (1922). However, it is fraud which is the basis for the recovery of compensatory damages, and the same fraud is not alone a sufficient basis upon which to premise an award of punitive damages. *Golomb v. Korus,* 261 Pa.Super. 344, 348, 396 A.2d 430, 432 (1978), citing *People's National Bank v. Kern,* 193 Pa. 59, 44 A. 331 (1899). If the rule were otherwise, punitive damages could be awarded in all fraud cases. This is not the law. The rule, rather, is that for punitive damages to be awarded there must be acts of malice, vindictiveness and a wholly wanton disregard of the rights of others. See: *Richette v. Pennsylvania R.R.,* 410 Pa. 6, 16–17, 187 A.2d 910, 916 (1963); *Golomb v. Korus, supra.*

In the instant case there was no evidence of malice, vindictiveness or wanton disregard of rights. Although appellants may have minimized the termite damage by misrepresenting its seriousness and the extent to which it had been remedied, they did disclose that the property had been infested with termites which had been exterminated. As we have already observed, moreover, there was no representation whatsoever which was made regarding the

quality of the water supply or the presence of chlordane in the water. Under these circumstances, the evidence did not support an award of punitive damages.

Reversed and remanded for a new trial.[4] Jurisdiction is not retained.

---

**4.** We find no basis for awarding a new trial by virtue of the trial court's failure to grant a requested instruction on mitigation of damages. Indeed, the record fails to contain a copy of the proposed instruction which was submitted to the trial court.