## Snyder v. Roach Brothers Realtors

*Eugene J. Malady,* for plaintiffs.
*Kathleen M. Valentine,* for defendants Roach Brothers Realtors and Virginia Hedden.
*Joseph M. Toddy,* for defendant Paula Shields.
*Jeffrey R. Sommer,* for defendant Mark Rowan.
*William T. Wilson,* for defendant Tobin H. Williams and Joy Mei-Juan Lee.

WOOD, *P.J.,* August 27, 1992—

### FINDINGS OF FACT

(1) Plaintiffs in this case are Michael F. Snyder and Diane Snyder, who contracted on August 31, 1989, to buy property known as 266 Colwyn Terrace, West Whiteland Township, Chester County, Pennsylvania, from Tobin H. Williams and Joy Mei-Juan Lee, the owners thereof.

(2) Williams and Lee are the sellers on the transaction and are two of the defendants in this case.

(3) For the purposes of the sale, they selected as their listing agent Roach Brothers Realtors, which is a third

defendant in this matter. Virginia Hedden is the employee of Roach Brothers Realtors, who handled the sale, and she is a fourth defendant.

(4) A sales agent contacted by the Snyders, and who acted as the selling agent in this matter, is Mark M. Rowan Inc., and their employee Paula Shields was the specific individual from the Rowan office who handled the sale. They are the fifth and sixth and final defendants in the case.

(5) The listing agreement in this case was executed on August 10, 1989. At the time it was signed, the premises had earlier tested out at as high as 77.1 picocuries per liter of radon gas in the enclosed areas, but the property had been corrected by the installation of a radon mitigation system which brought the level of picocuries down to below four.

(6) At all times relevant to this action, the material encompassed in the proceeding paragraph was known to Williams, Lee and Hedden, who was the sister-in-law of Williams.

(7) Radon is a colorless gas which percolates through the basement floor of some houses. Extended exposure to radon gas increases one's risk of lung cancer. As a result, the Environmental Protection Agency of the federal government has established a presumptively safe level of four picocuries per liter for any space regularly occupied by human beings.

(8) The Snyders had visited the Colwyn Terrace premises prior to executing the agreement of sale, but had not been told about the radon mitigation system and did not observe its presence. I find that there was nothing

about the physical appearance of the system which would have drawn attention to it on the part of the prospective buyers.

(9) At or about the same time the agreement of sale was executed (August 31, 1989), the parties also signed a radon disclosure addendum which authorized the buyers to have tests done regrading the radon levels and to withdraw from the sale if the tests showed radon levels in excess of four picocuries per liter. The buyers did not cause tests to be done. This addendum was seemingly produced as a routine matter and not because of any specific complaints or questions about radon.

(10) Williams at some point had provided Hedden with documentation regarding the radon mitigation system and encouraged her to disclose its existence to the Snyders. Hedden did disclose to the buyers the *results* of testing *subsequent* to the installation of the radon mitigation system, showing the level to be below four picocuries, but never disclosed to the Snyders the fact there was a radon mitigation system in place, or that tests prior to the installation of the system had shown levels almost 20 times in excess of the safe level.

(11) Had such disclosure been made prior to the execution of the agreement of sale, the Snyders would not have entered into the agreement of sale.

(12) During a pre-settlement inspection on October 31, 1989, Williams showed the radon mitigation system to the Snyders, and based on that, the Snyders failed to go through with settlement as scheduled. They asked for the return of their deposit money, but the sellers have refused to return it.

(13)  At no time prior to the disclosure in late October was Shields privy to the fact that there was a radon mitigation system on the premises or to the fact that the original radon tests had shown excessive levels of picocuries.

## DISCUSSION

At the heart of this case are three closely related questions: is the presence of radon in a home a "dangerous defect?"  If so, or perhaps even if not so, should the courts require that the existence of a radon problem in a home be disclosed to a prospective buyer?  And, if the answer to the second question is yes, should the presence in a home of a radon mitigation system be disclosed to a prospective buyer, even if the system is working and reduces the radon levels to a safe level?  If all three of these questions must be answered in the affirmative, then the Snyders had the right to cancel their settlement. If not, they didn't.

There are no decided cases on point which discuss or resolve this issue.  There are, however, a number of cases on termite infestation and formaldehyde insulation. In terms of the habitability of a house, I consider the presence of radon gas to be the equivalent of those defects.

The current view may be said to have originated with the decision of the Superior Court in *Glanski v. Ervine,* 269 Pa. Super. 182, 409 A.2d 425 (1979).  In *Glanski* the sellers' house had termite damage that was not reasonably apparent.  Poor lighting and a cluttered basement prevented the buyers from making a closer inspection. One of the two sellers denied that the house had termite

problems. The *Glanski* court concluded that both sellers had an affirmative duty to disclose dangerous conditions to purchasers and held that those sellers had a responsibility to disclose the existence of termite infestation. This principle was applied in *Quashnock v. Frost,* 299 Pa. Super. 9, 445 A.2d 121 (1982), even though the buyers in that case failed to inquire specifically about termites.

The *Quashnock* court included a requirement that the defect in question must be "dangerous" in order for the duty of disclosure to exist: *Quashnock, supra* at 19, 445 A.2d at 126, fn. 4. In light of the acknowledgement in the radon addendum that exposure to high levels of radon increases the risk of lung cancer, I would categorize the presence of high levels of radon as "dangerous."

In *Roberts v. Estate of Barbagallo,* 366 Pa. Super. 559, 531 A.2d 1125 (1987), a case involving formaldehyde, the court relied on the provisions of section 550 of the Restatement (2d) of Torts. That section requires an intentional concealment regarding material information. It is instructive that section 353 of the Restatement also imposes liability on "a vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land ... if ... the vendee does not know or have reason to know of the condition or the risk involved, and ... the vendor knows or has reason to know of the condition ... [and the risk] ... and has reason to believe that the vendee will not discover the condition or realize the risk." Although one of the defendants' contentions here was that the plaintiff should have seen

the radon mitigation machinery in the basement, I have found as a fact that it was not apparent, and I am also convinced from the testimony that Ms. Hedden, the agent for the owners, was aware that the presence of such machinery would be of interest to prospective buyers, and in order not to complicate (to put it nicely) a prospective sale, decided not to disclose any information regarding the radon situation except for the most recent test showing the satisfactory radon levels. Hence, I think that section 353 is applicable to this case.

With respect to the question of whether or not Hedden's conduct is binding on Williams and Lee, I note that *Aiello v. Ed Saxe Real Estate Inc.,* 508 Pa. 553, 499 A.2d 282 (1985), holds that a principal is liable for misrepresentations or concealments made by the agent in the course of the agent's employment.

Based on the foregoing discussion, it is clear in my mind that the presence of radon gas should be treated as a dangerous defect in a home, and that there is a duty upon the homeowners and those acting on behalf of the homeowners to disclose the existence of that defect if known to them, and that although Williams, Lee, Roach Brothers and Hedden can all be charged with notice here, there was no disclosure until Williams made disclosure just prior to the proposed settlement. I fault Hedden for this, rather than Williams and Lee, but I find that Hedden's conduct is binding on Roach Brothers, Williams and Lee. On the other hand, I do not think that either Shields or Mark M. Rowan Inc. had any knowledge of

the existence of the radon gas or the mitigation equipment and, consequently, I do not think that they are liable on this record.

There remains to be answered the third question of the three posed above: since the radon mitigation system, while in working order, was capable of reducing the radon level to below four picocuries, should the defect then be treated as one which is not dangerous or material, so as to excuse the owners from the necessity of disclosing it. I could find no appellate case law on the point. However, I consider that I am assisted by the case of *Roberts v. Estate of Barbagallo, supra.* In that case, the trial court declined to rescind the contract between the parties, and instead entered an award in an amount sufficient to allow the removal of the formaldehyde. The Superior Court held that since the plaintiff had originally elected rescission, the plaintiff would be allowed to rescind, and vacated the damage award. Although I am quick to acknowledge that the procedural context is far different than the context in our particular case, I think it is arguably a fair reading of the *Roberts* case to say that the court allowed a contract regarding an undisclosed defective condition to be rescinded even though the defective condition was correctable through the expenditure of a determinable sum of money.

I confess that I sympathize with the Snyders in not wanting to have the expense and worry of maintaining a radon mitigation system. It seems to me that the presence of excessive levels of radon in a home is a matter which should be disclosed by the owners and the real estate agents, and that even though the situation may

be corrected, the presence of corrective machinery should be disclosed. Any other rule would encourage deception between parties, and I think the modern trend is away from that. Whatever may be the current validity of the doctrine of *caveat emptor*, it is clear that the modern practice is to require full and fair disclosure of known dangerous defects by a seller of real estate: *Smith v. Renaut*, 387 Pa. Super. 299, 564 A.2d 188 (1989).

## CONCLUSIONS OF LAW

(1) Plaintiffs are entitled to rescind their contract with defendants Williams and Lee, due to the failure on the part of Williams and Lee and their real estate agents, Roach Brothers and Hedden, to disclose the existence of radon gas and radon mitigation equipment on the premises.

(2) In addition, plaintiffs are entitled to incidental damages at the hands of defendants Williams, Lee, Roach Brothers and Hedden, in the amount of $16,850 representing the $15,000 deposit, plus $1,575 for the one point paid and $275 for the application fee to the mortgage company. The additional capital gains taxes are too problematical. Interest shall be added at the rate of 6 percent per annum from October 31, 1989.

(3) Since it was the failure of Roach Brothers and Hedden to disclose the facts regarding the radon, as requested by Williams and Lee, they will be obliged to indemnify Williams and Lee for any losses in connection with the above award.

(4) Since neither Shields nor the Rowan agency had knowledge of the radon problem, the suit against them is dismissed.

## DECREE NISI

And now, August 27, 1992, I find in favor of plaintiffs and against defendants and declare the agreement of sale of August 31, 1989, to be rescinded. I find in favor of plaintiffs and against defendants Williams, Lee, Hedden and Roach Brothers, and make an award of $19,798.75. I declare that Hedden and Roach Brothers are obliged to indemnify Williams and Lee for any parts of this award that they are obliged to pay in excess of the security deposit plus accumulated interest, if any.