In re Joseph R. SOLFANELLI
and Natalie G. Solfanelli,
his wife, Debtors.

Joseph R. SOLFANELLI and Natalie
G. Solfanelli, his wife, Plaintiffs,

v.

MERIDIAN BANK and Stevens and Lee,
a Professional Corporation,
Defendants.

Bankruptcy No. 5–90–01120.
Adversary No. 5–92–0013.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

March 6, 1998.

See also 206 B.R. 699.

John H. Doran, Doran & Nowalis, Wilkes–Barre, PA, for Joseph Solfanelli.

Michael Lieberman, Joseph Dworetzky, Hangley, Aronchick, Segal & Pudlin, Philadelphia, PA, for Natalie Solfanelli.

Joan Sheak, Morton Branzburg, Philadelphia, PA, for Meridian Bank.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

My earlier Opinion on Counts I–IV and VII, reported in *In re Solfanelli*, 206 B.R. 699 (Bankr.M.D.Pa.1996) sets forth the procedural history of the litigation, including its bifurcation on July 5, 1994.

On June 23–27, 1997, the litigation of Counts V and VI was completed.

Count V of the Complaint attempts to void a release executed by Joseph and Natalie Solfanelli, the Plaintiffs, in favor of Meridian Bank on December 27, 1990. (Defendant's Exhibit No. 40 second trial), by alleging that an earlier telephonic discussion between Sam McCullough, chairman and chief executive officer of Meridian, and Richard Ross, chairman of First Eastern Bank, regarding the Plaintiffs' loan occurred without the Plaintiffs' knowledge and were sufficiently material as to cause the release to be rendered a nullity.

The gravamen of Count VI, civil conspiracy, is that Meridian Bank conspired with First Eastern Bank to administer the Solfanelli loan in a "commercially unreasonable" manner to put pressure on Mr. Solfanelli to cease and desist his efforts in seeking a sale or merger of First Eastern Bank.

In analyzing these allegations of fraud and civil conspiracy, the Court has carefully reviewed the four days of testimony and numerous exhibits offered during the course of the trial on Counts V and VI against the backdrop of the initial trial on Counts I, II, III, IV, and Count VII. That review has been enlightening.

Although the history is sketchy, Liberty Discount of Carbondale was the lender on a loan to Joseph Solfanelli, Natalie Solfanelli, and Carmen Tomaine secured, inter alia, by stock of the First Eastern Bank owned by Joseph Solfanelli. When Liberty was acquired by First Eastern Bank in 1987, First Eastern, apparently by banking regulation or its bylaws, was unable to continue this lending relationship with its own stock serving as collateral and referred the obligation to Meridian. (Transcript of 6/25/97 at 28–29.) Meridian carried this debt as a revolving credit facility. In its latest renewal, the Solfanellis and Tomaine executed a demand note for $4,900,000.00 on September 8, 1989, with interest payable monthly. (Plaintiffs' Exhibit No. 1, original trial.) The testimony confirmed the understanding of the parties that monthly interest would be permitted to accrue to principal. Nevertheless, the parties agreed that the loan balance to collateral value would not exceed 70%. To the extent that the 70% margin was exceeded, Meridian would require an immediate paydown or additional stock acceptable to the bank to return the ratio to 70%. These terms were made clear in the executed commitment letter endorsed by the parties. (Defendant's Exhibit No. 3 second trial.) Unfortunately for the Solfanellis, the market price of stock of First Eastern Bank, during the period following the execution of the promissory note of September 8, 1989, showed a volatility unfavorable to the Solfanellis. In fact, the testimony indicated that the loan exceeded this 70% ratio in April, 1990, and remained "out of margin" until judgment was confessed October 5, 1990, but for three weeks. (Transcript of 6/25/97 at 61.) It was understandable, therefore, that Meridian, during this time period, constantly applied pressure on the Solfanellis to make interest payments, liquidate some shares, or submit additional collateral. See, generally, the memorandums and notes of Meridian Bank officials, Anne Mohler and James Klahr, submitted as Defendant's Exhibits Nos. 8, 9, 15, 16, 18, 19, 20, and 21. Mr. Solfanelli, however, was disinclined to make interest payments. He made but one interest payment of $43,500.00 on or about the end of August, 1990. His Co-obligor, Carmen Tomaine, made a similar payment at the end of September, 1990. (Transcript of 6/25/97 at 158.) Neither does this record indicate any liquidation of collateral prior to judgment being confessed on

October 5, 1990. Mr. Solfanelli appears to have taken an alternative and, perhaps, more unique approach to returning to margin. In April of 1990, Solfanelli, as the largest single stockholder of First Eastern Bank, began a campaign to market the First Eastern Bank as either a merger partner or as an acquisition candidate. Solfanelli was aware that such a merger would "puff up" the value of his stock. Even if no merger actually occurred, such an interest would have an upward influence on the market price of First Eastern Bank stock and would thus serve to bring him back into margin on the Meridian loan. Secondarily, he attempted to capitalize on Meridian's general interest in acquiring First Eastern by offering to Meridian a large block of stock, above market, but likely below the overall expense of picking up such a number of shares in a short period of time.

Despite his best efforts to generate that interest, as well as the efforts of his lawyer and his consultant, Mr. Solfanelli's timing was premature. The record is replete with explanations why neither Meridian nor, presumably, most acquisition candidates, were not interested in First Eastern at this time. Mr. Solfanelli's prediction that a merger or acquisition was inevitable, was on the mark. Such an interest, however, was too late to be of value to Solfanelli.[1]

### Fraud and Misrepresentation

▇▇▇▇ Under Pennsylvania law, a signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake. *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 892 (3rd Cir.1975). The Solfanellis maintain that the failure to divulge the telephonic contact between Ross and McCullough was a material fact, the concealment of which voids the execution of the release. "The deliberate nondisclosure of a material fact amounts to culpable misrepresentation no less than does an intentional affirmation of a material falsity: see Restatement, Torts, § 529, comment a., and § 551." *Neuman v. Corn Exchange Nat. Bank & Trust Co.*, 356 Pa. 442, 451, 51 A.2d 759, 764 (1947).

Nondisclosure as a misrepresentation has been addressed by our Circuit in *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 609 (3rd Cir.1995).

In *Neuman v. Corn Exchange Nat. Bank & Trust Co.*, the Pennsylvania Supreme Court held that "[t]he deliberate nondisclosure of a material fact amounts to culpable misrepresentation no less than does an intentional affirmation of a material falsity." 356 Pa. 442, 51 A.2d 759, 764 (1947). Although the court did not delineate the elements of the tort, it specifically cited to Restatement section 551. *Id.* Numerous intermediate appellate courts in Pennsylvania have followed *Neuman*'s lead and held, following the principles in the Restatement, that to be liable for material nondisclosures, a party must have a duty to speak. In the oft-cited *Smith v. Renaut*, 387 Pa.Super. 299, 564 A.2d 188 (1989), the Pennsylvania Superior Court began its analysis by noting that " 'fraud consists in anything calculated to deceive, whether ... it be ... by speech or silence.... It is any artifice by which a person is deceived to his disadvantage.' " *Id.* 564 A.2d at 192 (quoting *McClellan's Estate*, 365 Pa. 401, 75 A.2d 595 (1950)). But, the court continued, "[w]hile a concealment may constitute fraud, mere silence is not sufficient in the absence of a duty to speak."

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 611–12 (3rd Cir.1995). This Court will accept the tacit invitation to review § 551 of the Restatement of Torts to determine whether Meridian had an obligation to disclose the telephone call between Ross and McCullough. That section of the Restatement reads as follows:

§ 551. **Liability for Nondisclosure**

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had

---

1. In 1993, PNC Bank announced its intent to acquire First Eastern Bank. (Transcript of 6/24/97 at 102.)

represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551 (1977)

■ The Solfanellis have failed to establish that Meridian had any duty to them to reveal the contact that Ross had with McCullough concerning the loan. In fact, there exist certain facts that would minimize the significance of any such contact. Those facts are as follows: (1) When First Eastern acquired Liberty Discount, they were aware that the Solfanellis had a loan collateralized by Liberty, soon-to-be First Eastern, stock— that is why Meridian was asked to take over the loan; (2) First Eastern was also conscious that Joseph Solfanelli continued to be

its largest stockholder; (3) First Eastern was painfully aware that First Eastern stock was diminishing in value; and (4) Within three weeks of the August telephone call, Mr. Solfanelli approached First Eastern Bank for a loan to extend the Meridian financing during the ongoing negotiations. Under these circumstances, McCullough's discussion with Ross regarding the Solfanellis' loan status could hardly be considered material to their plans despite what was averred on the record of this trial[2]. I find that the Plaintiffs have failed to establish cause to void the release.

### Civil Conspiracy

Even should the Court be wrong in its conclusion that the release is not void, I find that the Plaintiff has not stated a case on Count VI, civil conspiracy.

■ The hallmark of a conspiracy is an agreement. Such a conspiracy must ordinarily be proven by circumstantial evidence. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 n. 9 (1979) citing *Benford v. Sanner*, 40 Pa. 9, 17 (1861). In the absence of an agreement, there can be no conspiracy.

■ The Plaintiffs, in their Amended Complaint, have advised the Court that the alleged agreement in issue was "to administer" Meridian's loan in a commercially unreasonable manner so Mr. Solfanelli would cease his efforts to merge or sell First Eastern Bank. Presumably, this "agreement" was made during either an April, 1990 telephone call between Meridian president, Sam McCullough, and First Eastern Bank CEO, Richard Ross, or an August 23, 1990 telephone call between those same two people.

It was apparent from the testimony that Ross was not enthusiastic about Mr. Solfanelli's desire to see the First Eastern Bank acquired. (Transcript of 6/23/97 at 78.) If the alleged conspiratorial agreement was forged in April, then I could anticipate that Meridian would have immediately placed significant pressure on Mr. Solfanelli to liquidate his

---

**2.** Solfanelli claimed that, had he been aware that McCullough spoke to Ross regarding his loan, he would have sold his stock. (Transcript of June 25, 1997 at 157.) The Court does not find this

credible considering the absence of any evidence that Solfanelli encouraged the sale of his stock prior to its ultimate liquidation by Meridian in early 1992.

shares, since it was those shares that served as the fountainhead of Solfanelli's leverage in pursuing a sale or merger of the Bank. To the contrary, the record is fraught with multiple opportunities presented to Mr. Solfanelli to avoid liquidation and extend the Meridian loan, even after the loan exceeded the margin requirements. (Defendant's Exhibits Nos. 14, 15, 17, 18, 21, 23, and 24.) The evidence fails to support such a conspiratorial agreement being made in April. That conclusion requires this Court to focus on such an agreement being forged in August, 1990 during the telephone call of the 23rd between the two executives.

On that date, the loan to value margin stood at 93%. (Transcript of 6/25/87 at 139.) Under the loan documentation, Meridian was justified in immediately calling the loan. If the loan was called on that date or thereabouts, some argument could be maintained that the McCullough–Ross conversation played a role in the administration of the Solfanellis' loan. To the contrary, however, a memorandum, dated August 28, 1990, from James Klahr, chief loan officer assigned to Solfanellis' loan, and Anne Mohler, Klahr's assistant, to Sam McCullough actually shows increased flexibility in their negotiations with the Solfanellis. (Plaintiff's Exhibit No. 63 second trial.) In the memorandum, Meridian evidences a willingness to increase the margin requirements from 70% to 80% and possibly to 90% under alternative scenarios. The memorandum further substantiates the existence of ongoing negotiations through September, 1990. Changes to the 4.9 million dollar demand loan that would have deferred liquidation until the margin equalled 85% were actually recommended by Meridian officials to Meridian's Reading Senior Loan Committee on September 21, 1990. (Plaintiffs' Exhibit No. 65 second trial.) On September 25, 1990, Meridian sent a letter authorizing a continuance of the loan through October 31, 1990, upon the performance of certain conditions by the Solfanellis and Tomaine. An interest payment, a paydown, and a maintenance of the margin requirement at 80% were conditions of this extension, but these terms were reasonable considering the history of the loan. (Plaintiffs' Exhibit No. 67 second trial.)

It was manifestly apparent that Meridian's attempt to hammer out a resolution short of litigation continued until the eventful meeting of October 2, 1990, between Jim Klahr, Anne Mohler, Meridian's lawyer, Ernie Choquette (there at Mr. Solfanelli's request), Joseph Solfanelli and his counsel, Bob Rosenberg. Mr. Solfanelli gave the Meridian personnel the impression that "bankers" would be accompanying him to the meeting, presumably to help finance the rewrite of the loan. No bankers were present. Meridian, rather, was asked to liquidate the stock and walk away from the deficiency, approximated at $600,000.00. Meridian was told by Mr. Solfanelli that Chapter 11 was being considered on counsel's advice. (Defendant's Exhibit No. 28 second trial.) After this option was rejected by Meridian, alternative proposals were tendered by Solfanelli. While these proposals were not rejected out of hand, it was apparent that Meridian lost patience with the negotiating process and exercised their rights to declare the loan in default and confess judgment. (Defendant's Exhibit No. 26, 26A, 31 second trial.)

Having discounted the role that the Ross–McCullough phone calls of April and August may have played on the alleged conspiratorial agreement, I turn to the implication that an agreement may have been made otherwise during the April to October, 1990 time frame. I find that there is not a scintilla of evidence, either direct or circumstantial, that such an agreement was made, such as would support the count of civil conspiracy. Except for the deficiency identified in the liquidation of the First Eastern Bank stock and noted in the earlier opinion, the record doesn't even hint at Meridian performing any act that it did not have a legal right to do. Under such circumstances, the law will typically not inquire into its motives. *Kirmse v. Adler*, 311 Pa. 78, 86, 166 A. 566, 569 (1933). The one limited exception may be where an entity is motivated solely by an intention to cause harm to the victim. *Rosenblum v. Rosenblum*, 320 Pa. 103, 181 A. 583 (1935). This record does not support such an intention.

Even should such a conspiratorial agreement be implied, the Solfanellis have failed to

show the critical element of damage essential to any recovery under this count. *Gregory v. Chehi,* 843 F.2d 111, 118 (3rd Cir.1988) ("a civil conspiracy is not actionable unless it causes legal harm. Absent specific injury, a plaintiff asserting civil conspiracy cannot recover.") No merger or acquisition plan has been shown to have failed because of the activity of Meridian Bank vis-a-vis the Solfanellis. Neither have the Solfanellis demonstrated an ability to fund or service a rewritten loan agreement so as to preserve their financial position and avoid bankruptcy.

■ It has been said that the evidence used to establish a civil conspiracy must be "full, clear and satisfactory." *Fife v. Great Atl. & Pac. Tea Co.,* 356 Pa. 265, 267, 52 A.2d 24, 39, *cert. denied,* 332 U.S. 778, 68 S.Ct. 42, 92 L.Ed. 362 (1947). Stated another way, "evidence which merely creates the suspicion of concerted action is insufficient." *Larsen v. Philadelphia Newspapers, et al.,* 411 Pa.Super. 534, 563, 602 A.2d 324, 339 (1991). I need not explore the possibility that "full, clear and satisfactory" is a burden of proof that would exceed the normal "preponderance of the evidence" burdens associated with a civil case. Even applying the preponderance standard, the Solfanellis have not met the standard of proof required of them. They have shown no more than a mere telephone call from one banker to another indicating that the second banker's biggest stockholder was in danger of losing his stock. The Solfanellis have not established a civil conspiracy.

This is not to say that McCullough was justified in contacting Ross on August 23, 1990 and discussing the Solfanellis' precarious financial position. Such activity may be a breach of a customer's right to privacy. See, generally Edward L. Raymond, Jr., J.D., *Bank's Liability, under State Law, for Disclosing Financial Information Concerning Depositor or Customer,* 81 A.L.R.4th 377 (1990). This possible tort, however, was not the subject matter of the Complaint and, therefore, need not be addressed.