**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3043
_____

MUHAMMAD SAJID

v.

MOHAMMAD IJAZ; SHAISTA IJAZ

Mohammad Ijaz,
Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-01899)
District Judge: Honorable Wendy Beetlestone
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 28, 2020
_____

Before: AMBRO, HARDIMAN, and RESTREPO, *Circuit Judges*.

(Filed: October 8, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Following a bench trial, the District Court entered judgment against Appellant Mohammad Ijaz for common law fraud and awarded Appellee Muhammad Sajid $106,000 in compensatory and punitive damages. On appeal, Ijaz challenges the District Court's common law fraud determination and the punitive damages award. We will affirm the District Court's judgment.

**I.**

In August 2016, Ijaz placed an advertisement in the *Urdu Times*, a weekly Urdu-language community newspaper, listing the "urgent sale" of a gas station located in West Chester, Pennsylvania.[1] App. 70 (¶ 4). The advertisement identified the gas station as "[a] highly profitable business . . . with excellent monthly income" that was "available for immediate sale." App. 31 (¶ 7). Although the gas station was owned by Ijaz's wife, Shaista Ijaz, neither owned the land on which the gas station was located. Instead, they leased it from a third-party landlord and were allowed to sublease the property only with the landlord's consent.

Sajid saw the advertisement in New York, where he worked as a limousine driver. After speaking with Ijaz on the phone, Sajid agreed to meet Ijaz at the gas station to discuss the potential sale. Later, Ijaz showed Sajid what he represented to be receipts from previous years' sales, which indicated convenience store revenue

---

[1] Ijaz disputes many of the facts presented by Sajid. The District Court accepted Sajid's version of the facts as more credible than Ijaz's. We see no reason to doubt the District Court's findings of fact. *See Ragan v. Tri-Cty. Excavating, Inc.*, 62 F.3d 501, 507 (3d Cir. 1995) ("When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings.").

ranging from $1,200 to $1,400 per day. He also represented that nearly 3,000 gallons of gasoline were sold each day for approximately $1,200 per day in profit. Ijaz did not inform Sajid that he did not own the property on which the gas station was located and that his ability to transfer the property was contingent on the landlord's consent.

Sajid eventually agreed to the purchase of the gas station (including the gas in the ground), the attached convenience store, its inventory, and equipment for $45,000. After receiving the payment, Ijaz informed Sajid that his attorney was preparing a written agreement to memorialize the sale. In the interim, Sajid operated the gas station from September 16 through September 22, 2016.

On September 19, Ijaz provided Sajid with the written agreement, which stated that Sajid would have no ownership interest in the business and that he would serve as an independent contractor. Sajid refused to sign the agreement. A few days later, Ijaz informed Sajid that he no longer wanted to sell him the gas station and that he would return Sajid's money within two days. Despite Sajid's follow-up efforts, Ijaz never returned the money. Without any savings or assets, Sajid moved back to New York and was unemployed for two months. In October 2016, Ijaz placed the same advertisement in the *Urdu Times* for the sale of the gas station.

Sajid filed a lawsuit against Ijaz, alleging common law fraud, breach of contract, and other claims. Following a bench trial, the District Court entered judgment in favor of Sajid on the fraud and breach of contract counts.[2] The Court

---

[2] Sajid also filed claims against Shaista Ijaz, but the District Court dismissed all claims against her. Also, Ijaz does not appeal the District Court's breach of contract ruling.

ordered an award totaling $106,000—$56,000 in compensatory damages and $50,000 in punitive damages—for common law fraud. Ijaz timely filed a notice of appeal.

## II.

The District Court had jurisdiction over this case under 28 U.S.C. §§ 1331 and 1332. This Court has jurisdiction over final orders of the District Court pursuant to 28 U.S.C. § 1291.

For an appeal from a bench trial, we review the district court's conclusions of law de novo and its factual findings for clear legal error. *Kosiba v. Merck & Co.*, 384 F.3d 58, 64 (3d Cir. 2004). "A finding of fact is clearly erroneous when it is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 283 (3d Cir. 2014) (internal quotation marks and citation omitted). As the reviewing court, we "must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6).

## III.

Ijaz challenges the District Court's judgment against him for common law fraud that awarded punitive damages to Sajid. He argues that the record evidence is insufficient to meet the burdens required for each ruling. We disagree and will affirm the District Court's judgment.

## A.

The District Court concluded that Ijaz committed fraud[3] based on two

---

[3] Under Pennsylvania law, a plaintiff may sustain a claim of common law fraud by proving: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or

4

misrepresentations: "(1) that the gas station was for sale and that [Ijaz and his wife] intended to sell it, and (2) that the gas station was as profitable as [Ijaz] claimed it to be." *Sajid v. Ijaz*, No. 18-1899, 2019 WL 3802032, at *5–8 (E.D. Pa. Aug. 12, 2019). Ijaz argues there was not clear and convincing evidence to prove three elements of fraud: falsity, intent to deceive, and justifiable reliance. We consider each misrepresentation in turn.

First, Ijaz argues that Sajid failed to prove the sale misrepresentation by clear and convincing evidence. He claims that the uncontested evidence shows he intended to sell the business to any willing purchaser, but the parties were unable to salvage the original deal when his landlord refused to sublease the property. He also takes issue with the District Court discounting his testimony that the parties had discussed the lease restrictions and that Sajid knew that the underlying property was owned by a landlord.

Although it is not clear what standard of proof the District Court applied when considering the sale misrepresentation, there exists clear and convincing evidence in support of the Court's finding. *Rohm and Haas Co. v. Cont'l Cas. Co.*, 781 A.2d 1172, 1179 (Pa. 2001) ("The burden of proving fraud must be established by clear and convincing evidence . . . ."). The advertisement only mentions a sale, and Ijaz did not inform Sajid of the lease restrictions until after the sale was complete and Sajid took possession of the gas station. Sajid's refusal to sign the independent contractor agreement is the behavior of someone who was led to believe that he purchased the

---

false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

5

gas station. Ijaz's decision to repost the same advertisement, after having gone through the events at issue here, is highly probative of his initial fraudulent intent. The record evidence shows that Sajid had no knowledge that Ijaz's representations were false, and he should not have been expected to, given his inexperience in the gas station business.

Ijaz next challenges the District Court's finding that his statements on the gas station's profitability were fraudulent. First, he points out that the District Court applied the wrong standard of proof. Second, he takes issue with the District Court's finding that "[t]he difference in sales [Sajid] claims to have made in the week he ran the business and the average sales Mr. Ijaz represented to [Sajid] is large enough to support the inference that Mr. Ijaz's representation was untruthful." *Sajid*, 2019 WL 3802032, at *7.

We agree that the District Court applied the incorrect standard of proof when it determined that the statements were untrue "[b]y a preponderance of evidence." *Id.* Again, plaintiffs must demonstrate fraud by clear and convincing evidence. *Rohm and Haas Co.*, 781 A.2d at 1179. But the record still supports the District Court's finding under this elevated burden. Ijaz claimed that Sajid would generate $1,200 to $1,400 per day in convenience store sales, and approximately $1,200 per day in gasoline sales. Instead, Sajid earned between $130 and $150 per day in gross sales from the convenience store, and $2,500 over the course of the entire week from gasoline sales, leading the District Court to conclude that those statements were false. As to intentionality and justifiable reliance, we defer to the District Court's determination that Ijaz's lack of credibility undercuts his arguments. *See Sajid*, 2019 3802032, at

6

\*7–8. The nature of the misrepresentation itself supports the finding that Ijaz intended to mislead Sajid in making the overvaluations.

**B.**

Ijaz also appeals the District Court's award of punitive damages to Sajid. He argues that he did not exhibit conscious disregard of the harm to Sajid and that the award violates his due process rights under the Fourteenth Amendment.[4]

Ijaz knew that "sale" of the gas station would induce Sajid to uproot his life in New York, where he had raised his family and worked the same job for thirty years. Ijaz defrauded Sajid into leaving his old life by way of a patently false promise that he owned a profitable gas station, which he was not able to sell or intended to sell. Sajid, now in his 60s, still has not received the $56,000 compensatory award from Ijaz. Moreover, Ijaz's decision to repost the advertisement for the "sale" of the gas station in the *Urdu Times* indicates that he is likely to commit fraud again in the future. Punitive damages are thus suitable to deter him from engaging in that future conduct. *Feingold v. Se. Pa. Transp. Auth.*, 517 A.2d 1270, 1276 (Pa. 1986) ("[T]he purpose of imposing punitive damages is to punish the wrongdoers and to deter future conduct.").

As to whether the District Court's award of punitive damages violates Ijaz's due process rights, the Supreme Court has provided guideposts when considering the

---

[4] Under Pennsylvania law, "a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005) (citation omitted). "[F]or punitive damages to be awarded there must be acts of malice, vindictiveness and a wholly wanton disregard of the rights of others." *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 741 (3d Cir. 1991) (quoting *Smith v. Renaut*, 564 A.2d 188, 193 (Pa. Super Ct. 1989)).

proportionality of an award. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996) (identifying the three guideposts as the degree of reprehensibility, the disparity between the plaintiff's harm and the award, and the difference between the award and penalties imposed in similar cases). In light of the reprehensibility guidepost's importance to this analysis, the Supreme Court further instructed courts to consider whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

The first two subfactors factors are not at issue here, as the harm caused was not physical and Ijaz's harm did not endanger the Sajid's safety. As to financial vulnerability, Ijaz chose to advertise the sale of the gas station only in the *Urdu Times*, whose target audience is a small immigrant community in New York. Further, Ijaz and his wife had owned, operated, or managed ten to fifteen gas stations, whereas Sajid had no prior experience in the business. The fact that Ijaz reposted the advertisement in the same paper just one month after the incident at issue in this case undercuts his contention that his conduct was an isolated incident. Ijaz further concedes that "the harm was the result of intentional malice, trickery, or deceit," but argues that those factors are outweighed by the other *Gore* factors. Appellant's Br. 22. We disagree and conclude that the subfactors weigh in favor of punitive damages.

8

Lastly, we note the punitive damages award is proportional to the damages Sajid suffered. Although ratios between punitive damages and compensatory damages are not binding, "[s]ingle-digit multipliers are more likely to comport with due process." *State Farm*, 538 U.S. at 425. Here, the ratio between punitive and compensatory damages is less than one. Based on the facts and the circumstances of Ijaz's conduct and the harm to Sajid, the District Court's award of punitive damages was not grossly excessive.

**IV.**

For the foregoing reasons, we will affirm the judgment of the District Court.