615 A.2d 438

**PITTSBURGH LIVE, INC.**

v.

**Edward B. SERVOV and Bethel Mart Associates, a Partnership, Appellants.**

Superior Court of Pennsylvania.

Submitted Aug. 27, 1992.

Filed Oct. 28, 1992.

424

John E. Quinn, Pittsburgh, for appellants.

Joseph W. Conway, Sarver, for appellee.

Before MONTEMURO, KELLY and BROSKY, JJ.

MONTEMURO, Judge:

This is an appeal from a final decree in equity that imposed a constructive trust on a 1.3 acre tract of land; directed appellants to convey the tract to appellee within sixty days; and, ordered appellants to pay to appellee the sum of $23,970 which represents $6,000 in compensatory damages, $7,970.78 in counsel fees, plus $10,000 in punitive damages. On appeal, appellants assert that the chancellor erred by: (1) concluding that appellee had been fraudulently induced into transferring the tract of land; (2) awarding counsel fees to appellee; and, (3) awarding punitive damages. After review of the record, we affirm the transfer of the property and the award of compensatory damages; however, we reverse the award of counsel fees and punitive damages.

Appellant, Bethel Mart Associates (BMA), which is a limited partnership, is the former owner of a shopping center situated

in Bethel Park, Pennsylvania. During the time that it owned the shopping center, BMA attempted to locate a tenant who would lease a portion of the shopping center for the purpose of establishing a high volume business such as a restaurant or nightclub. For various reasons, BMA was initially unable to find such a tenant.

Appellant, Edward Servov, Esq., BMA's general partner and also one of its limited partners, discussed BMA's inability to find a suitable tenant with his long time business associate, Raymond Seitz, D.D.S.; who is also a limited partner in BMA. During their discussion, Dr. Seitz and Attorney Servov decided to resolve BMA's problem by forming appellee, Pittsburgh Live, Inc., for the express purpose of establishing a nightclub in the shopping center.[1] Appellee and Dr. Seitz then jointly leased a portion of the shopping center from BMA.

Now that a suitable tenant was found, Dr. Seitz and Attorney Servov had to address one of the major hurdles that prevented a nightclub from opening in the shopping center; specifically, the lack of adequate parking facilities. To acquire additional parking, Dr. Seitz and Attorney Servov contacted an adjoining landowner, Mrs. Elma May Connelly, to ascertain whether she would be willing to sell a portion of her property to appellee. Eventually, Mrs. Connelly agreed to sell a 1.3 acre tract of land to appellee for the sum of $35,000.00. Dr. Seitz then paid Mrs. Connelly $1,000.00 in earnest money from his own bank account and a sales agreement (Agreement) was executed memorializing the terms of the proposed sale.

Several years later, BMA ran into financial difficulty and filed for bankruptcy under Chapter 11 of the Bankruptcy Code of 1978, 11 U.S.C. § 101 *et seq.* Pursuant to Chapter 11, BMA filed various plans for reorganization with the bankruptcy court. Under the terms of court approved plan, BMA would sell its assets to a single purchaser. Following the sale, the proceeds would then be used to satisfy the claims of

---

1. At the time of incorporation, Mr. Servov was appellee's attorney and Dr. Seitz its president. According to Dr. Seitz, he is also appellee's sole shareholder. Attorney Servov disputes this assertion and contends that appellee is owned equally by Dr. Seitz and Attorney Servov's wife.

BMA's numerous creditors.[2] Appellee and Mrs. Connelly were identified as creditors of BMA whose claims were to be satisfied from the sale proceeds.

The purchaser of BMA's assets made the sale contingent upon the termination of appellee's lease and any other agreements then existing between appellee and BMA. To satisfy these conditions, BMA entered into an agreement with appellee, whereby appellee agreed to terminate the lease for $1.00 and other good and valuable consideration. Apparently, the other good and valuable consideration contemplated by the parties was appellee's receipt of the residual of the bankruptcy estate. The sale was then consummated and the proceeds distributed to the creditors including appellee who received $287,115.73.[3] In addition, $40,000.00 was set aside so BMA could complete the sale with Mrs. Connelly.

According to Attorney Servov, Mrs. Connelly was identified as a creditor of BMA because appellee had assigned the Agreement to BMA on January 3, 1986. Dr. Seitz disputes Attorney Servov's assertion that there was a valid assignment of the Agreement. It is Dr. Seitz's contention that he was fraudulently induced into assigning the Agreement. The chancellor agreed.

Before the chancellor, Dr. Seitz alleged that Attorney Servov told him that in addition to the lease termination, the purchaser of BMA's assets required that the signatures on the Agreement correspond with the signatures on the lease. Because Dr. Seitz was an individual tenant under the lease, he added his individual signature to the Agreement. Dr. Seitz claims that Attorney Servov subsequently added words of assignment to the Agreement.

Despite Dr. Seitz's protestation that the Agreement had not been assigned, Attorney Servov closed on the property paying

2. BMA's creditors were divided into various classes. Based on their class assignment, BMA's creditors received either full or partial payment on their claims.

3. Although Attorney Servov had structured the reorganization to provide appellee with $500,000, additional creditors asserted claims against BMA thereby reducing the monies available for distribution to appellee.

Mrs. Connelly the balance due on the $35,000.00 sale price and retaining approximately $6,000.00. Appellee then brought a suit in equity, wherein it alleged that it had been fraudulently induced into assigning the Agreement and asked the chancellor to order appellants to convey the property to appellee, pay compensatory and punitive damages, and counsel fees. After a hearing, the chancellor entered a decree nisi granting the requested relief. This appeal followed the entry of the final decree.

■ Preliminarily, we note that our scope of review in this matter is particularly limited. We must accept the chancellor's findings of fact and we will not reverse the chancellor's determination absent a clear abuse of discretion or error of law. *Gurenlian v. Gurenlian,* 407 Pa.Super. 102, 595 A.2d 145 (1991); *Werner v. Werner,* 393 Pa.Super. 125, 573 A.2d 1119 (1990), *alloc. denied,* 527 Pa. 668, 593 A.2d 843 (1991). "[W]here the chancellor's findings are largely dependent upon the credibility of witnesses, [as is the case here,] the findings are entitled to particular weight, as the chancellor had the opportunity to observe the demeanor of the witnesses." *Walley v. Iraca,* 360 Pa.Super. 436, 441, 520 A.2d 886, 889 (1987).

■ Appellants first argue that the evidence is insufficient to conclude that appellants had fraudulently induced the assignment of the Agreement. In support of this argument, appellants direct our attention to a litany of facts which they argue impeach the credibility of Dr. Seitz and show that the assignment was not fraudulently induced. In essence, appellants argue that the chancellor erred by not accepting their factual history of the dispute.

■ Before addressing this claim, we note that "[f]raud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 107, 464 A.2d 1243, 1251 (1983). The elements of an action for fraud consist of: (1) a misrepresentation, (2) a

fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result. *Id.,* 318 Pa.Super. at 108, 464 A.2d at 1252–53 (quoting *Scaife Co. v. Rockwell–Standard Corp.,* 446 Pa. 280, 285, 285 A.2d 451, 454 (1971)). Each of the aforementioned elements must be proved by clear and convincing evidence. *Gerfin v. Colonial Smelting & Refining Co., Inc.,* 374 Pa. 66, 67, 97 A.2d 71, 72 (1953).

For the evidence to be clear and convincing, the witnesses must be credible. This means that the witnesses must both distinctly remember the facts to which they testify, and narrate the details exactly. *Id.,* 374 Pa. at 72, 97 A.2d at 74. If the witnesses testimony fails to meet this exacting standard, an action for fraud cannot be maintained.

Here, we find that appellee's evidence met this exacting standard. Dr. Seitz clearly and distinctly set forth the events which led to his signing of the Agreement. There was no deviation in his testimony or lapse in his memory. However, appellants assert that we should disregard Dr. Seitz's testimony because it was successfully impeached. We disagree.

Both parties presented an abundance of evidence in support of their respective version of the facts. To resolve this dispute, the chancellor had to determine whose witnesses were credible. Here, the chancellor chose to believe the testimony of Dr. Seitz and disregard the testimony of Attorney Servov. Because the chancellor had the opportunity to observe the demeanor of both men and assess their credibility, we find that chancellor did not err by finding Dr. Seitz to be credible and disregarding the testimony of Attorney Servov. Accordingly, we affirm that portion of the decree which concludes that appellee was fraudulently induced into assigning the Agreement and the award of compensatory damages.

Appellants also argue that the chancellor erred by awarding counsel fees to appellee. We agree.

It is well established that a litigant is responsible for his own counsel fees absent an agreement by the parties or

430

some other established exception. *Shanks v. Alderson,* 399 Pa.Super. 485, 488, 582 A.2d 883, 885 (1990), *alloc. denied,* 528 Pa. 638, 598 A.2d 994 (1991). Unfortunately for appellee, there is no established exception which permits recovery of attorney fees in an action for fraud. *Id.,* 399 Pa.Super. at 488, 582 A.2d at 885. Accordingly, we reverse the award of counsel fees.

█ Finally, appellant contends that the chancellor erred by awarding punitive damages. Here, appellee may recover punitive damages if there are aggravating circumstances beyond those that justified the award of compensatory damages. *Smith v. Renaut,* 387 Pa.Super. 299, 309, 564 A.2d 188, 193 (1989). However, when fraud is the basis of compensatory damages, the same fraudulent conduct is not sufficient to base an award of punitive damages without more. *Id.,* 387 Pa.Super. at 309, 564 A.2d at 193. To justify the award of punitive damages, there must be acts of malice, vindictiveness and a wholly wanton disregard of the rights of others. *Id.,* 387 Pa.Super. at 309, 564 A.2d at 193. Here, there was no such evidence and therefore, the award of punitive damages cannot be affirmed.

Decree affirmed in part and reversed in part. Case remanded for entry of a decree consistent with this opinion. Jurisdiction is relinquished.