## Herrera v. Papillon

C.P. of Monroe County, No. 7308 CV 2011.

*James T. Mulligan,* for plaintiff.

*Joseph S. Weismeth,* for defendants Marvin Papillon and Papillon Contracting, Inc.

*James L. Goldsmith,* for defendant RE/MAX Crossroads Realty.

*Patrick J. Boland, III,* for defendants Better Homes and Gardens, R.E. and Wilkins and Associates.

*Marc B. Zingarini,* for defendant Safe Guard Home Inspections.

ZULICK, *J.,* April 11, 2013—On August 8, 2009, Rene Herrera entered into a written contract with Marvin

Papillon ("Papillon") for the purchase of property located at 14 Chapman Road, East Stroudsburg, Pa ("property"). Herrera inspected the home personally, and hired a professional inspector to do the same. Shortly after the contract was completed, and Herrera moved into the home, Herrera observed that rainstorms would cause the basement to flood, sometimes taking on two to three feet of water. Herrera brought suit against multiple parties, including Papillon and his contracting business, Papillon Contracting, Inc. Herrera additionally sued his agent in the home purchase, Mr. Papillon's agent in the home purchase, and the home inspection service he hired before completing the contract.

Herrera sued Papillon for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1, et. seq., ("UTPCPL") and for fraud. Herrera has alleged that Papillon knew of the flooding issue, and not only did not disclose it to Herrera, but actively sought to hide the same by pumping water out of the flooded basement on at least one occasion. Herrera seeks punitive damages and the payment of Herrera's attorney fees.

Papillon filed preliminary objections to Herrera's third amended complaint. Papillon asserts: (1) Papillon Contracting, Inc. is not a proper party to the action, as it had no dealings with Herrera during the purchase of the property, (2) Herrera failed to set forth a legally viable claim for either fraud or a violation of the UTPCPL, (3) Herrera failed to set forth a legally viable claim for punitive damages, and (4) Herrera failed to set forth a viable claim for attorney's fees. After receiving briefs from both parties, this matter was argued before the court on April 1, 2013.

Papillon's preliminary objections are in the nature of a demurrer. In considering preliminary objections, "all well-pleaded allegations and material facts averred in the complaint, as well as all reasonable inferences deductible therefrom, must be accepted as true." *Wurth by Wurth v. City of Philadelphia*, 584 A.2d 403, 407 (Pa. Cmwlth. 1990). The "court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Penn Title Insurance Co. v. Deshler*, 661 A.2d 481, 483 (Pa. Cmwlth. 1995).

First, Papillon objects to the inclusion of Papillon Contracting, Inc. as a party to the suit. Generally, a contract action cannot be maintained against a person or entity not a party to the contract, except where the non-party is a third party beneficiary, or where the suit is for breach of warranty or product liability. *Nicolesu v. Kerr*, 38 Pa. D. & C. 4th 546, 549 (Pa. Com. Pl. 1998) (*citing Manor Junior College v. Keller's Inc.*, 507 A.2d 1245 (Pa. Super. 1986)). Papillon Contracting, Inc. is not mentioned at all in the Property contract. Marvin Papillon is listed as the seller. Marvin Papillon signed the contract. "A corporation is not in reality a person, but the law regards it as distinct and separate from the individual stockholders. It has a real existence with rights and liabilities as a separate legal entity. This is true even if a single individual owns and controls all of the corporation's stock." *U.S. v. Sain*, 141 F.3d 463, 474 (3d Cir. 1998) (internal quotations and citations omitted).

Simply alleging that Papillon committed a wrong is not enough to establish the corporation's liability. The only other mention of Papillon Contracting, Inc. is in Herrera's brief, where Herrera states that when notified of the flooding issue, Mr. Papillon sent an employee of Papillon Contracting, Inc. to investigate the matter. However, Herrera's third amended complaint merely states that Papillon sent an agent to investigate, and Papillon Contracting, Inc. is not mentioned further. As the third amended complaint does not allege a wrongdoing by, or a relationship with, Papillon Contracting, Inc., Papillon's preliminary objection is sustained and Papillon Contracting Inc. is removed as a party to this proceeding.

Next, Papillon argues that Herrera has failed to allege a viable claim under the UTPCPL and for fraud. Papillon argues (1) the Real Estate Seller Disclosure Law ("Disclosure Law"), 68 Pa. C.S. §7301, *et. seq.*, precludes the UTPCPL claim and (2) Herrera failed to allege the necessary elements of his claim for fraud.

Herrera's UTPCPL and fraud claims are based upon Papillon's alleged failure to disclose previous flooding of the basement of the home, and attempts to conceal the problem. Under the UTPCPL, sellers can be found liable for engaging in any "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §201-2(4)(xxi). For a claim to succeed under this so called "catch-all" provision, Herrera must prove, similar to fraud, that he justifiably relied on the defendant's wrongful conduct and was thereby harmed. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).

The violation of the Disclosure Law is the basis for Herrera's UTPCPL claim against Papillon. The Disclosure Law requires that "[a]ny seller who intends to transfer any interest in real property [must] disclose to the buyer any material defects with the property known to the seller…" 68 Pa. C.S. §7303. Papillon counters that because Herrera engaged an expert inspection company, who did not find any problems with the property, Papillon cannot be held liable for any non-disclosures or omissions relating to the property. In support, Papillon cites to §7309 of the Disclosure Law, which states:

(a) General rule. — A seller shall not be liable for any error, inaccuracy or omission of any information delivered pursuant to this chapter if:

(1) the seller had no knowledge of the error, inaccuracy or omission;

(2) the error, inaccuracy or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected; or

(3) the error, inaccuracy or omission was based on information provided by a public agency, home inspector, contractor or person registered or licensed under an act referred to in section 7503(a) (relating to relationship to other laws) about matters within the scope of the agency's jurisdiction or such other person's occupation and the seller had no knowledge of the error, inaccuracy or omission.

(b) Delivery of information by public agency. — The delivery of any information required to be disclosed by

this chapter to a prospective buyer by a public agency or other person providing information required to be disclosed under this chapter shall be deemed to comply with the requirements of this chapter and shall relieve the seller or the agent of the seller from any further duty under this chapter with respect to that item of information.

(c) Report by expert. — The delivery of a report or opinion prepared by a home inspector, contractor or person registered or licensed under an act referred to in section 7503(a) dealing with matters within the scope of the person's registration, license or expertise shall be sufficient compliance for application of the exemption provided under subsection (a)(3) if the information is provided to the prospective buyer in writing.

68 Pa. C.S. §7309. This statute does not preclude the UTPCPL claim. Here, Papillon is alleged to have had knowledge of the defect. The failure to disclose the flooding problem was not based on a lack of knowledge, a reasonable belief that the problem had been corrected, or a public report. Further, insofar as Papillon relies on the fact that Herrera procured an expert to undertake an inspection, who found no defects, §7309 of the Disclosure Law appears only to apply in cases where the seller commissions and delivers an expert report to the buyer. Therefore, the Disclosure Law does not preclude a UTPCPL claim in the present case.

Papillon argues that Herrera has failed to plead the elements of fraud. In Pennsylvania,

[T]o prove fraud the following elements must be shown: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Milliken v. Jacono*, 60 A.3d 133, 140 (Pa. Super. 2012). Further,

[i]n real estate transactions, fraud arises when a seller knowingly makes a misrepresentation, undertakes a concealment calculated to deceive, or commits non-privileged failure to disclose. Fraud is a generic term used to describe anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture.

*Id.*, quoting *Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa.Super.2002) (citations and quotation marks omitted), *appeal denied*, 573 Pa. 714 (2003). If Herrera's allegations are taken as true, Papillon misrepresented the condition of the property by failing to disclose the flooding problem. Further, Herrera has alleged that Papillon knew of the flooding problem, and actively tried to conceal the same, by pumping the water out of the basement. Herrera would be justified in relying on the disclosures of a seller of real estate in Pennsylvania, and, if true, Papillon's failure to disclose the flooding problem would be the proximate cause

of Herrera's injury. Therefore, Herrera has adequately pled the elements of fraud.

In the alternative, Papillon argues that Herrera should be barred from introducing extrinsic evidence as to the UTPCPL and fraud claims, based on the parol evidence rule. "The parol evidence rule functions to bar the introduction of evidence concerning alleged prior misrepresentations when a writing is adopted by the parties as the final and complete expression of their agreement." *Rock v. Voshell*, 397 F. Supp. 2d 616, 622 (E.D. Pa. 2005). Additionally,

[c]ontracts often contain an integration clause, specific language establishing that such agreement is the final and complete expression of the agreement. An integration clause ensures that the written contract, if unambiguous, is held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract.

*Id.* at 623. The property contract between Herrera and Papillon did contain an integration clause. The integration clause in the present case states:

This agreement contains the whole Agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

Agreement of sale ¶28(A). However, evidence of misrepresentation by a seller in a real estate contract can supersede the parol evidence rule.

> Where buyers allege that they were fraudulently induced to purchase a property through fraud or misrepresentation, the applicability to the parol evidence rule is determined by balancing the extent of the party's knowledge of objectionable conditions derived from a reasonable inspection against the extent of the coverage of the contract's integration clause in order to determine whether the party could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad integration clause.

*Bowman v. Meadow Ridge, Inc.*, 615 A.2d 755, 759 (Pa. Super. 1992) (*citing LeDonne v. Kessler*, 389 A.2d 1123 (Pa. Super. 1978)).

Here, Herrera alleges that he was fraudulently induced to purchase the property. While the integration clause in the property contract is broad in scope, Herrera further alleges that he did not learn of the flooding after undertaking a reasonable inspection. Herrera alleges that Papillon actively hampered his ability to discover the flooding problem by pumping water out of the basement. On balance, the Herrera's lack of knowledge, or means to acquire the same, outweighs the breadth of the integration clause. Therefore, Papillon's objection to the fraud and UTPCPL claims in the alternative will likewise be denied.

Papillon next objects to Herrera's prayer for punitive damages. Punitive damages are an 'extreme remedy' available only in the most exceptional circumstances.

> Additionally, punitive damages may be appropriately awarded only when the Herrera has established that the defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others.

*Phillips v. Cricket Lighters*, 584 Pa. 179, 188 (2005) (internal citations omitted). "The trial judge must determine in the first instance whether the Herrera has presented sufficient evidence to support a punitive damage claim, which requires evidence on which the jury might reasonably conclude that outrageous conduct has been established by a preponderance of the evidence." *Rizzo v. Michener*, 584 A.2d 973, 979 (Pa. Super. 1990). "When fraud is the basis of Compensatory damages, the same fraudulent conduct is not sufficient to base an award of punitive damages without more." *Pittsburgh Live, Inc. v. Servov*, 615 A.2d 438, 442 (Pa. Super. 1992).

Reading the complaint in the light most favorable to Herrera, Papillon knew of the defect in the property's basement, did not disclose it to Herrera, and actively prevented Herrera's discovery of the defect. The intentional covering up of the defect by Papillon goes beyond fraudulent non-disclosure. As such, a jury could reasonably find that outrageous conduct has been established by a preponderance of the evidence. Accordingly, Papillon's preliminary objection is denied.

Finally, Papillon objects to Herrera's prayer for the payment of Herrera's attorney's fees. "It is well established that a litigant is responsible for his own counsel fees absent an agreement by the parties or some other established exception." *Pittsburgh Live*, 615 A.2d at 441 (citations omitted). There is no exception for claims of fraud. *Id.* at 442. However, attorney's fees may be allowed under the UTPCPL. *See*, 73 P.S. §201-9.2(a). Papillon concedes that attorney's fees are recoverable under the UTPCPL. Therefore, Papillon's preliminary objection will be sustained with regard to the claim for fraud, and denied with regard to the claim under the UTPCPL.

## ORDER

And now, April 11, 2013, upon consideration of defendant Marvin Papillon's preliminary objections, the briefs by both parties, and the argument before the court, it is ordered:

1. Defendant Papillon Contracting, Inc.'s demurrer is granted. plaintiff's claims against Papillon Contracting, Inc. are dismissed.

2. Defendant Marvin Papillon's demurrer to Plaintiff's claim for attorney's fees in count II — fraud of the third amended complaint is granted. Plaintiff Herrera claim for attorney's fees in this count is dismissed.

3. Defendant Papillon's remaining preliminary objections are denied.

4. The caption of this matter is amended to spell Papillon's name in accordance with the spelling he uses

428

in his pleadings.

5. Papillon is directed to file an answer to the third amended complaint within twenty (20) days.