J-A17023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GEORGE M. AXILBUND TRUST, GRUBMAN HOLDING LLC, PAULA SUSSMAN ABRAMS TRUST, FRANCIS T. RODDY (KEYSTONE BUSINESS CENTER II), AND DOUGLAS R. SAYER | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | : : | |
| v. | : : | |
| SHELLY FORMAN, PHYLLIS FORMAN, ANDREA AZOFF, WENDY ABRAMS, AND DONNA BALABAN | : : : : | |
| Appellants | : | No. 214 EDA 2021 |

Appeal from the Judgment Entered December 10, 2020
In the Court of Common Pleas of Bucks County
Civil Division at No(s): No. 2018-00999

BEFORE:   McLAUGHLIN, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY KING, J.:                    Filed: November 18, 2021

Appellants, Shelly Forman, Phyllis Forman, Andrea Azoff, Wendy Abrams, and Donna Balaban, appeal from the judgment entered in the Bucks County Court of Common Pleas in favor of Appellees, George M. Axilbund Trust, Grubman Holding LLC, Paula Sussman Abrams Trust, Francis T. Roddy (Keystone Business Center II), and Douglas R. Sayer.  The underlying action concerns fraudulent transfers made in violation of the Pennsylvania Uniform

_____

* Retired Senior Judge assigned to the Superior Court.

J-A17023-21

Voidable Transactions Act ("PUVTA"), 12 Pa.C.S.A. §§ 5101-5114.[1] We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> [Appellees] and Tenant Shelly's Medication Services, Inc. ("SMS") entered into a commercial lease agreement on July 30, 2012 for a five-year term commencing on September 1, 2012 and expiring on August 31, 2017.
>
> [Appellant] Shelly Forman was the President and sole stockholder of SMS.
>
> The Board of Directors of SMS, at all relevant times, consisted of [Appellants].
>
> On June 22, 2015, almost three years after the execution of the lease, SMS sold substantially all of its assets to an unrelated entity, Contract Pharmacy Services ("CPS") for the amount of $1,396,990.88.
>
> Prior to the sale, SMS's Directors had discussed selling the business on an ongoing basis, beginning as early as 2013.
>
> In June of 2015, once SMS was sold to CPS, [Appellants] knew that the business would have no further income.
>
> When SMS sold its assets to CPS, the company had a sufficient amount of money to pay its debts and properly terminate the … lease.
>
> The directors of SMS knew they had a continuing obligation to pay rent to [Appellees], unless they complied with Section 48 of the lease.
>
> Section 48 of the Lease between [Appellees] and SMS allowed SMS to terminate the lease….

---

[1] Prior to an amendment, PUVTA was known as the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"). **See** 12 Pa.C.S.A. § 5101(a). References to both PUVTA and PUFTA appear throughout the record and the parties' briefs.

- 2 -

* * *

On September 10, 2015, SMS sent written notice to [Appellees'] representatives of its termination of the lease. In this letter, SMS states that it has wound up its business and ceased operations.

By waiting until September 2015 to send written notice to [Appellees], SMS failed to comply with Section 48.

[Appellees] filed suit against SMS on November 12, 2015, alleging that SMS breached the lease at docket number 2015-07786 (the "underlying action").

Trial of the underlying action was held on February 26, 2017 before the [trial judge] without a jury. The primary issue was whether Section 48 of the lease permitted SMS to terminate the lease prior to its scheduled end date of August 31, 2017.

On June 12, 2017, [the] court issued its decision after the submission of proposed findings of fact and conclusions of law and found in favor of [Appellees] against SMS on its breach of contract action. Specifically, [the] court held that SMS was in violation of the lease as soon as it stopped paying rent.

Also on June 12, 2017, [the] court entered a verdict in the amount of $270,636.41 in favor of [Appellees and] against … SMS.

On June 22, 2017, … SMS filed a motion for post-trial relief pursuant to Pa.R.C.P. 227.1 and Bucks County Local Rule 227.1(a), requesting that [the] court vacate its verdict and order a new trial, or, in the alternative, to modify its verdict of June 12, 2017 to determine that SMS properly exercised its rights under Section 48 of the lease and is liable for the sum of $10,338.22. In this motion, SMS also respectfully submitted that [the] court erred in entering a verdict in the amount of $270,636.41 when, in its conclusions of law, [the] court concluded that the total amount due to [Appellees] was $219,456.77. [Appellees] responded to [SMS's] post-trial motion on June 27, 2017.

On October 19, 2017, after consideration of [SMS's] post-trial motion and [Appellees'] response thereto, [the] court issued an order and supplemental decision, vacating the previous June 12, 2017 order and directing the Prothonotary to enter a verdict in the amount of $219,456.77. Additionally, [the] court denied all other post-trial relief and directed the Prothonotary to issue judgment on the verdict in the amount of $219,456.77 on behalf of [Appellees] against SMS.

The verdict amount of $219,456.77 included the rent for the entire unexpired term of the lease, as well as the other charges, payments, costs and expenses due under the lease pursuant to Paragraph 14(d)(i). The court awarded no damages to [Appellees] for any repairs, legal fees, costs, late fees or interest.

On December 8, 2017, [Appellees] filed a motion to mold verdict to include pre and post judgment interest and costs, requesting [the] court to add pre-judgment interest in the amount of $26,334.81, costs in the amount of $1,327.99, and post-judgment interest in the amount of $36.07 per day from October 19, 2017 to the date the judgment is paid and satisfied.

[SMS] responded to [Appellees'] motion to mold verdict on January 24, 2018.

[Appellees'] motion was never *praeciped* forward for disposition, pursuant to Bucks County Local Rule 208.3(b), and therefore the court never ruled on same.

The judgment and verdict were not appealed, but there is no record that any amount of the verdict has been paid to [Appellees].

In 2018, [Appellees] filed two lawsuits against [Appellants] that were consolidated … (docket number 2018-00999). [Appellees'] three claims against [Appellants] include: (1) breach of fiduciary duty; (2) fraudulent transfers in violation of Section 5104(a)(2) and Section 5105 of [PUVTA]; and (3) fraudulent transfers in violation of Section 5104(a)(1) of PUVTA.

(Trial Court Opinion, filed February 16, 2021, at 2-5) (quoting Trial Court Opinion, filed April 21, 2020, at 2-5) (some internal capitalization, footnotes, numbering, quotation marks, and record citations omitted).

Appellees' amended complaint asserted that SMS had advised Appellees that it had no funds to pay the prior judgment in favor of Appellees. (*See* Second Amended Complaint, filed 8/1/18, at 2). However, after SMS had sold its assets and was "winding down," SMS diverted certain funds to Appellants. (*Id.*) Appellees insisted that these funds should have been used to satisfy the prior judgment, and Appellants transferred the funds "with the actual intent to hinder, delay or defraud creditors, including [Appellees]." (*Id.* at 3).

A bench trial commenced on October 1, 2019. By order filed on April 22, 2020, the court entered its verdict in favor of Appellees against Appellants, jointly and severely, in the amount of $219,456.77. The court also awarded interest "to be calculated at the lawful rate of 6% per year from the date that [SMS] stopped paying rent to [Appellees] in this case, which was October 1, 2015." (Verdict and Order, filed 4/22/20, at 1). In light of judicial emergency orders related to the COVID-19 pandemic, the court provided that the effective date of the verdict would be May 18, 2020.

Both parties timely filed post-trial motions. On June 18, 2020, the court denied all post-trial motions except for Appellees' motion regarding attorney's fees, which the court opted to address at a future hearing. On July 28, 2020, the court conducted its hearing on the issue of attorney's fees. Thereafter,

the parties filed briefs on the matter. On September 4, 2020, the court awarded attorney's fees to Appellees in the amount of $113,678.60. Appellants filed another post-trial motion to challenge the attorney's fees on September 11, 2020. On December 3, 2020, the court denied Appellants' motion.

On December 10, 2020, Appellants filed a *praecipe* to enter judgment in favor of Appellees and against Appellants. Appellants timely filed a notice of appeal on December 18, 2020. On December 22, 2020, the court ordered Appellants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellants timely filed their Rule 1925(b) statement on December 28, 2020.

Appellants now raise three issues for our review:

Did the trial court err in awarding attorney's fees to [Appellees] where [PUVTA] does not provide a statutory right to attorney's fees and where there is no evidence in the record supporting an award of attorney's fees in the form of punitive damages or otherwise?

Did the trial court err in awarding attorney's fees in the amount of $113,678.60, which constitutes 40% of the total amount of compensatory damages plus interest awarded by the trial court?

Did the trial court abuse its discretion by awarding prejudgment interest dating from when it determined that [SMS], a third-party to this action, breached a contract with [Appellees] rather than the date that [Appellees] first filed suit against the [Appellants] in this action?

(Appellants' Brief at 9-10) (footnote omitted).

In their first two issues, Appellants argue that Section 5107(a)(3)(iii) of PUVTA, a "catch-all" provision that describes remedies available to creditors, does not provide statutory authority to award punitive damages in the form of counsel fees. (*Id.* at 47). Further, Appellants assert that there is no evidence that they "engaged in acts of malice, vindictiveness or with a wanton disregard of others," or that their conduct was "dilatory, obdurate or vexatious." (*Id.* at 47, 50). Appellants also contend that the trial court's calculation of $113,678.60 in attorney's fees was improper because it constituted forty percent (40%) of the total amount of compensatory damages plus interest, and the court "did not provide any analysis of the actual charges sought by [Appellees]." (*Id.* at 57). Based upon the foregoing, Appellants conclude that trial court erred by awarding counsel fees. We disagree.

"Appellate review of a trial court's order awarding attorney's fees to a litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award." *Thunberg v. Strause*, 545 Pa. 607, 614-15, 682 A.2d 295, 299 (1996). "If the record supports a trial court's finding of fact that a litigant violated the conduct provisions of the relevant statute providing for the award of attorney's fees, such award should not be disturbed on appeal." *Id.* at 615, 682 A.2d at 299. *See also Kraisinger v. Kraisinger*, 34 A.3d 168, 175 (Pa.Super. 2011) (reiterating that this Court's review of grant of counsel fees is limited, and we will reverse only upon showing of plain error).

Here, the court awarded counsel fees in the form of punitive damages. (**See** Trial Court Opinion at 15). A party "may recover punitive damages if there are aggravating circumstances beyond those that justified the award of compensatory damages." **Pittsburgh Live, Inc. v. Servov**, 615 A.2d 438, 442 (Pa.Super. 1992).

> However, when fraud is the basis of compensatory damages, the same fraudulent conduct is not sufficient to base an award of punitive damages without more. To justify the award of punitive damages, there must be acts of malice, vindictiveness and a wholly wanton disregard of the rights of others.

**Id.** (internal citations omitted). **See also Nebesho v. Brown**, 846 A.2d 721, 728 (Pa.Super. 2004) (concluding award of attorney's fees might have been proper in equity action if such fees were in nature of punitive damages; despite trial court's denial of punitive damages, court's opinion provided sufficient basis for award as attorney's fees; remand was required to allow court to determine nature of its award, *i.e.*, to clarify whether attorney's fee award was in nature of punitive damages).

Remedies available to a creditor under PUVTA include:

### § 5107. Remedies of creditor

**(a) Available remedies.—**In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in sections 5108 (relating to defenses, liability and protection of transferee or obligee) and 5109 (relating to extinguishment of claim for relief), may obtain:

\* \* \*

> (3)    Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>
> *    *    *
>
> (iii) any other relief the circumstances may require.

12 Pa.C.S.A. § 5107(a)(3)(iii).

The Third Circuit of the United States Court of Appeals has noted the absence of a Pennsylvania appellate court ruling on whether Section 5107(a)(3)(iii) allows for the award of punitive damages. **See Klein v. Weidner**, 729 F.3d 280, 286-96 (3d Cir. 2013) (anticipating that Pennsylvania Supreme Court would conclude that punitive damages are available under PUVTA). Although this Court has not ruled on this precise issue, we have confirmed that Section 5107(a) provides a trial court "with the discretion to award any relief the circumstances required…." **Kraisinger, supra** at 175.

Additionally, the Judicial Code governs the award of attorney's fees as follows:

### § 2503.  Right of participants to receive counsel fees

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> *    *    *
>
> (7)    Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

42 Pa.C.S.A. § 2503(7). *See also Miller v. Nelson*, 768 A.2d 858, 862 (Pa.Super. 2001) (stating, "The relentless pursuit of a claim which plainly lacks legal merit warrants an award of counsel fees").

Instantly, at the hearing on the issue of counsel fees, Appellees presented Grace M. Deon, Esquire, to testify as an expert in "the valuation of attorney services." (N.T. Hearing, 7/28/20, at 19). Attorney Deon testified regarding multiple instances where Appellants' attempts at obstruction forced Appellees' attorneys to "jump through more hoops than necessary." (*Id.* at 30). Appellees submitted a report prepared by Attorney Deon, wherein she opined that the counsel fees incurred by Appellees "were reasonable and necessary." (Appellees' Hearing Exhibit P1). Attorney Deon's investigation of the case files led her to conclude that "the work performed by [Appellees'] attorneys was necessitated by the actions, inactions and/or conduct of [Appellants] and their counsel." (*Id.*) For example, during the pendency of the instant case, Attorney Deon noted that "[d]iscovery related matters were void of professional courtesy." (*Id.*) Attorney Deon also observed that Appellants insisted that the parties attend mediation to resolve all outstanding claims, but Appellants did not act in good faith once the mediation began. (*See id.*; N.T. Hearing, 7/28/20, at 32).

The trial court subsequently determined that Appellants' conduct warranted an award of counsel fees:

> [Appellants'] behavior was in complete disregard of the rights of [Appellees] to continue receiving the rent payments and [Appellants] wrongfully withheld funds from [Appellees]. … More shockingly, in this case, after all the evidence was submitted, [Appellants] again conceded in their post-trial proposed findings of fact that $70,000.00 was due. Yet, they never paid this $70,000, nor provided an explanation as to why they never paid it. Not once but twice [Appellants] have walked into a courtroom, knowing and conceding that they owed [Appellees] at least a portion of the money demanded, and they have refused to pay it until a judge ordered them to do so.
>
> *     *     *
>
> When the court issued its verdict and ordered discovery to take place, to locate where the fraudulently transferred money went, [Appellants] refused to provide that discovery and instead filed an objection to same.

(Trial Court Opinion at 17, 18). (**See also** Appellants' Proposed Findings of Fact, filed 12/6/19, at ¶137 (conceding that Appellees could recover at least $70,000.00 "under any theory"); Appellants' Post-Trial Motion, filed 5/4/20, at 3 (contesting court's discovery mandate that Appellants provide location of funds or assets to pay judgment)).

Regardless of whether PUVTA's catch-all provision provides a distinct basis for awarding punitive damages, the court had authority to award counsel fees under Section 2503. The record supports the court's finding of some dilatory, obdurate, or vexatious behavior. **See Thunberg, supra**; 42 Pa.C.S.A. § 2503(7). Under the unique circumstances of this case, we cannot say that the court's reasoning amounts to an abuse of discretion. **Id.**

Regarding the amount of counsel fees awarded, Appellees' post-trial brief indicated that they had "incurred in excess of $145,000.00 in legal fees and costs…." (Appellees' Brief, filed 5/13/20, at 9). Based upon her review of the relevant case files, Attorney Deon opined that Appellees' attorneys' billing rates were appropriate. (N.T. Hearing, 7/28/20, at 23). Consequently, the court explained its calculation of counsel fees as follows:

[The] court's September 3, 2020 decision awarding attorneys' fees was based on evidence, arguments, testimony, and exhibits that were presented at a hearing. [The] court found the testimony of [Appellees'] expert witness, Grace M. Deon, Esq., was credible, and the fees were reasonable, appropriate, and earned by counsel. [Appellees] requested a total of $200,657.42 in legal fees and costs, plus $32,500.00 in interest. Despite finding that all of the fees were reasonable, appropriate, and earned, [the] court limited the award of fees to a sum less than the full amount earned in the above-captioned case (Docket No. 2018-00999), together with the post-trial motions therein, including [Appellees'] claim for attorneys' fees.

Not only did [the] court make an assessment of attorneys' fees based on the testimony presented, but [the] court also included a proportionality analysis comparing the amount of legal fees with the verdict in the September 3, 2020 decision. This case has been actively litigated past the verdict, so [the] court concluded under a normal contingent fee agreement, [Appellees'] counsel's efforts would result in a fee of forty percent. [The] court then limited the attorneys' fees to $113,678.60, which the court found was proportionately reasonable and equitable compared to the verdict. This award was not made without careful consideration of the existing law. Under our system of justice, a litigant is responsible for his own counsel fees absent an agreement by the parties, or some other established exception; however, the law does allow for an award of attorneys' fees where punitive damages are warranted and/or the parties' behavior is dilatory, obdurate or vexatious.

- 12 -

(Trial Court Opinion at 20-21) (internal citations and some internal capitalization omitted). We emphasize that the record, particularly the testimony and expert report from Attorney Deon, supported the court's award of $113,678.60 to Appellees. **See Thunberg, supra**. Therefore, Appellants are not entitled to relief on their first two issues.

In their final issue, Appellants argue that the trial court's award of prejudgment interest is calculated from the incorrect date. (Appellants' Brief at 66). Appellants assert that the accrual date for prejudgment interest should have started on "the date when the creditor files suit against the transferee, not the date of the transfer or the date when the initial obligation arose." (**Id.**) Appellants conclude that "[t]here is no basis for awarding prejudgment interest against [Appellants] in this case prior to any point in time when [Appellees] had demanded payment from those individuals." (**Id.** at 67-68). We disagree.

"Our review of an award of pre-judgment interest is for abuse of discretion." **Kaiser v. Old Republic Ins. Co.**, 741 A.2d 748, 755 (Pa.Super. 1999). Pennsylvania courts have awarded prejudgment interest as of right in contract cases, "but also as an equitable remedy awarded to an injured party at the discretion of the trial court." **Somerset Community Hosp. v. Allan B. Mitchell & Associates, Inc.**, 685 A.2d 141, 201 (Pa.Super. 1996). "Pre-judgment interest in such cases is a part of the restitution necessary to avoid injustice." **Kaiser, supra** at 755.

"[P]re-judgment interest may be awarded 'when a defendant holds money or property which belongs in good conscience to the plaintiff, and the objective of the court is to force disgorgement of his unjust enrichment.'" ***Id.*** (quoting ***Dasher v. Dasher***, 542 A.2d 164, 164-65 (Pa.Super. 1988)). "The fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing." ***Linde v. Linde***, 220 A.3d 1119, 1150 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 236 A.3d 1048 (2020) (quoting ***Gurenlian v. Gurenlian***, 595 A.2d 145, 148 (Pa.Super. 1991)).

Instantly, the trial court awarded prejudgment interest from the date that SMS breached its contract to pay rent to Appellees:

> [The] court found that it was equitable for [Appellees] to be compensated by prejudgment interest from the time the funds were due the [Appellees]. But for [Appellants'] fraudulent conduct, the judgment would have been paid by the corporation years ago, and [Appellees'] original request for pre-judgment interest following the original verdict would be moot. The corporation had the funds to pay the original verdict when it diverted the money to the individual [Appellants]. At that time, [SMS] could have made a very reasonable argument; one that would have been successful—that the pre-judgment interest was unnecessary and unreasonable, in view of the totality of the award. Instead, there has been systematic fraud and deceit, delaying payment of the money due. An award of interest during that delay was inherently reasonable.

(Trial Court Opinion at 15).

In order to avoid injustice, the court awarded prejudgment interest from October 1, 2015. ***See Kaiser, supra***. ***See also Linde, supra*** (affirming trial

court's award of prejudgment interest from earlier date than that advanced by appellants; recognizing that appellee was entitled to interest on value of her shares that appellants had taken from her, and interest began to run at time of taking; concluding that court's decision was in accord with equities of case and served to fully compensate appellee for her losses). Thus, we cannot say that the court abused its discretion. *See Kaiser, supra*. Accordingly, we affirm the judgment in favor of Appellees.

Judgment affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/18/21